# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

<table>
<tr><td>

NGOLA SANTOS,
    *Plaintiff*,

    v.

EYE PHYSICIANS AND SURGEONS, P.C.,
    *Defendant*.

</td><td>

No. 3:18-cv-1515 (VAB)

</td></tr>
</table>

## RULING AND ORDER ADOPTING RECOMMENDED RULING AND DENYING LEAVE TO AMEND

On September 6, 2018, Ngola Santos ("Plaintiff") sued Eye Physicians and Surgeons, P.C. ("Defendant"), alleging, *inter alia*, violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 (the "ADA"), and the False Claims Act, 29 U.S.C. § 3721. Complaint, dated Sept. 10, 2018 ("Compl."), ECF No. 1.

On October 1, 2018, Magistrate Judge William I. Garfinkel recommended that Mr. Santos's Complaint be dismissed for failure to state a claim. *See* Recommended Ruling, dated Oct. 18, 2018 ("Rec. Ruling"), ECF No. 11.

For the reasons explained below, the Court **ADOPTS** Judge Garfinkel's recommended ruling, **DISMISSES** the Complaint under 28 U.S.C. § 1915(e)(2)(B) with prejudice, and **DENIES** both of Mr. Santos's pending motions to amend the Complaint, ECF Nos. 7 and 12, as futile.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

On August 31, 2015, Mr. Santos allegedly went to Eye Physicians and Surgeons' office in Orange, CT, where Dr. Sharpiro and an unknown technician (referred to in the Complaint as "Jane Doe") examined his eyes. Compl. ¶ 7. Mr. Santos alleges that, after the eye exam, Dr.

Sharpiro informed him that he saw cataracts in Mr. Santos's left eye and believed that Mr. Santos had diplopia (double vision) in the eye. *Id.* ¶ 8. Dr. Sharpiro allegedly instructed Mr. Santos to return after "several months" for another eye exam to determine whether surgery would be necessary to correct the cataracts and diplopia. *Id.*

Mr. Santos alleges that he then "asked the Defendant" to complete his insurance company's short-term disability benefits forms. *Id.* ¶ 9.

A few days later, Mr. Santos allegedly called Defendant's main office in Milford, CT, "after being instructed by a voicemail by Defendant," to get an update on the forms. *Id.* ¶ 10. Mr. Santos alleges that he "faced hostility and retaliation from a tech, Jane Doe 2[.]" *Id.* ¶¶ 10–16. When he asked her for an update on the form, she allegedly told him—without checking his records—that "[w]e are not giving you Disability." *Id.* ¶ 12. Mr. Santos alleges that he tried to explain her that "Defendant's duty" was only to complete the form, and that his insurance company would determine whether he gets disability benefits or not. *Id.* ¶ 14. But Jane Doe 2 allegedly "wouldn't listen" and "would not cooperate and fill out the forms[.]" *Id.* ¶¶ 14–15.

Mr. Santos alleges that he then asked to speak with the manager, and that his call was then taken by Defendant's practice administrator, D. Breen. *Id.* ¶ 16. D. Breen allegedly "immediately" told him that they would not be giving him disability. *Id.* Mr. Santos alleges that after he explained "the process," D. Breen agreed to fill out the forms and submit them to the insurance company. *Id.* Mr. Santos alleges that "Defendant retaliated in anger by asking [him] why he didn't schedule the surgery," even though "surgery was not necessary for several months at that time, since only near sight was substantially affected," and that Defendant "did not want to support [him] being out of work on [s]hort term disability and other arbitrary reasons" unless Mr. Santos scheduled surgery. *Id.* ¶ 19.

In November 2015, Mr. Santos alleges that his employer gave him an ADA accommodation sheet to be filled out in order to determine whether he was eligible for accommodation at work," *Id.* ¶ 20. Mr. Santos alleges that Defendant completed the sheet, but "sabotaged" it by not acknowledging that he had "any impairment," which resulted in the "misrepresentation" of Mr. Santos's impairments to his employer and prevented him from receiving accommodations, as his employer thought he was "not ill or impaired." *Id.* ¶ 22; *see* ADA Accommodation Sheet, dated November 7, 2019, annexed as Ex. 2 to Compl.

Mr. Santos alleges that, when he made future attempts to contact Eye Physicians and Surgeons for medical information, D. Breen would "call or send a letter" telling Mr. Santos that "they helped him enough and to never contact [the] office again." *Id.* ¶ 24. Mr. Santos alleges that when he called to find out why he received the letter, and D. Breen "rudely talked over [Mr. Santos] and [hung] up the phone." *Id.* ¶ 25.

Mr. Santos alleges that the actions of Eye Physicians and Surgeons and its employees "resulted in [the] termination" of his employment. *Id.* ¶ 26.

### B. Procedural Background

On September 6, 2018, Mr. Santos sued Eye Physicians and Surgeons, alleging multiple causes of action under federal and state law. *See* Compl. Mr. Santos alleged two federal claims, arguing that Defendant: (1) violated the False Claims Act by creating a false claim concerning Mr. Santos's accommodations at work, which created a false claim for Mr. Santos's accommodations at work, and resulted in him not receiving any accommodations, *id.* ¶¶ 37–38 (Count Three); and (2) violated the ADA by refusing to acknowledge Mr. Santos's disability and impairments for the sake of disqualifying him for accommodations and benefits, which resulted

in him not receiving accommodations and eventually termination from his job, *id.* ¶¶ 45–46 (Count Four).

Mr. Santos also alleged five state-law claims, arguing that Defendant: (1) committed medical malpractice by breaching patient/physician confidentiality, *id.* ¶¶ 27–29 (Count One); (2) committed fraud by intentionally and negligently submitting fraudulent and misleading information and denying knowledge of Mr. Santos's vision impairment, *id.* ¶¶ 30–34 (Count Two); (3) discriminated against him in violation of Connecticut General Statute §§ 46(a)–64 *et seq.*, which prohibits discrimination in public accommodations on the basis of race, color, ancestry, age, mental disability, and physical disability, *id.* ¶¶ 48–49 (Count Five); (4) orchestrated a "civil conspiracy" against him "in discriminating and denying the Plaintiff's accommodations and benefits for his disability," *id.* ¶¶ 50–51 (Count Six); and (5) breached its fiduciary duty to him, *id.* ¶¶ 52–57 (Count Seven).

That same day, Mr. Santos moved for leave to proceed *in forma pauperis*. Motion to Proceed *in forma pauperis*, dated Sept. 10, 2018, ECF No. 2.

On September 11, 2018, the Court referred Mr. Santos's motion for leave to proceed *in forma pauperis* to Magistrate Judge Garfinkel. Order, dated Sept. 11, 2018, ECF No. 6.

That same day, Mr. Santos moved to amend his Complaint. Motion to Perform First Relation Back of Amendment of Original Complaint ("First Mot. to Amend Compl."), dated Sept. 11, 2018, ECF No. 7. Mr. Santos seeks to bring the following additional state law claims against Eye Physicians and Surgeons: (1) a claim for medical malpractice based on failure to recognize symptoms, *id.* ¶¶ 58–63; misreading or ignoring laboratory symptoms, *id.* ¶¶ 64–66; failure to diagnose or misdiagnosis, *id.* ¶¶ 67–69; disregarding or not taking appropriate patient

history, *id.* ¶¶ 70–73; and poor follow-up or aftercare, *id.* ¶¶ 74–78; and (2) a claim for personal injury, *id.* ¶¶ 79–80.

On October 1, 2018, Magistrate Judge Garfinkel granted Mr. Santos's motion for leave to proceed *in forma pauperis*, but recommended that Mr. Santos's Complaint be dismissed under 28 U.S.C. § 1915(e)(2)(B). *See* Order, dated Oct. 1, 2018, ECF No. 8; Rec. Ruling.

Judge Garfinkel recommended dismissing Mr. Santos's Americans with Disabilities Act claim because the Complaint: (1) "does not allege facts to support that the defendant discriminated against [him] as a result of a disability," *id.* at 3; (2) does not "allege what reasonable accommodation [Mr. Santos] required and was denied, or the nature of the discrimination that allegedly occurred, *id.*; and (3) "seeks only monetary compensation" when "the only remedy available [for such a claim] is injunctive relief[,]" *id.* at 4. Judge Garfinkel also recommended that Mr. Santos's False Claims Act claim be dismissed because Mr. Santos: (1) "is not seeking to vindicate any rights belonging to the federal government, but instead seeking damages for injury to himself," *id.*; and (2) is a *pro se* litigant and therefore may not pursue a *qui tam* action under Second Circuit law, *id.* at 5.

Judge Garfinkel therefore recommended that both federal claims be dismissed for failure to state a claim upon which relief can be granted, and that the Court decline to exercise supplemental jurisdiction over the remaining state law claims. *Id.* at 5–6.

On October 17, 2018, Mr. Santos moved for an extension of time to object to the recommended ruling. Motion for Extension of Time, dated Oct.17, 2018, ECF No. 10. On October 18, 2018, the Court granted that motion. Order, dated Oct. 18, 2018, ECF No. 11.

On October 29, 2018, Mr. Santos moved to amend his Complaint to add a claim of intentional infliction of emotional distress under Connecticut law. Motion to Perform Second

Relation Back of Amendment of Original Complaint, dated Oct. 29, 2018 ("Second Mot. to Amend Compl. "), ECF No. 12, ¶¶ 81–85.

That same day, Mr. Santos objected to Judge Garfinkel's Recommended Ruling. Motion of Objection to Recommended Ruling of Dismissal, dated Oct. 29, 2018 ("Pl.'s Obj."), ECF No. 13. Mr. Santos argues, *inter alia*, that Judge Garfinkel's recommended ruling should be dismissed because: (1) Mr. Santos does have physical and mental disabilities and Dr. Sharpiro and the other staff at Eye Physicians and Surgeons were aware of these disabilities, *id.* at 2–6; (2) the cases used in Judge Garfinkel's recommendation were "plagiarized," and are too dissimilar from Mr. Santos's case to be used as comparisons, *id.* at 2, 4; and (3) Mr. Santos did not request compensation for monetary damages, *id.* at 6. In his objection, Mr. Santos responds to each paragraph in the recommended ruling. *See id.* at 1–9.

Mr. Santos requests that the Court "strike or dismiss" Judge Garfinkel's recommended ruling. *Id.* at 1, 9. In the alternative, if dismissal of his action "is unavoidable," he requests that the case instead be transferred to another court "in accordance with" 28 U.S.C. § 1406(a), in the interest of justice and to avoid problems of re-filing after the statute of limitations on his claims may have run. *Id.*

## II.     STANDARD OF REVIEW

28 U.S.C. § 1915(e) requires the Court to dismiss a *pro se* litigant's case "at any time" if the Court determines that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

To state a claim on which relief can be granted, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based

and to demonstrate a right to relief. *Bell Atl. v. Twombly,* 550 U.S. 544, 555–56 (2007). Conclusory allegations are insufficient. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

It is also well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006); *see also Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman,* 470 F.3d at 474); *Tracy v. Freshwater,* 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing rules of special solicitude for *pro se* litigants).

In reviewing a recommended ruling from a magistrate judge, a district judge "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" *Bank of N.Y. Mellon v. Fletcher,* No. 3:18-cv-506 (VAB), 2018 WL 3472623, at *1 (D. Conn. Jul. 19, 2018) (quoting 28 U.S.C. § 636(b)(1)); *see also Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir. 1989) ("Even if neither party objects to the magistrate's recommendation, the district court is not bound by the recommendation of the magistrate.").

But the court must review *de novo* any portions of a magistrate judge's recommended ruling to which an objection is made. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); FED. R. CIV. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *see also Hynes v. Squillace,* 143 F.3d 653, 656 (2d Cir. 1998) ("Under 28 U.S.C. § 636(b)(1), the Magistrate Judge's Report–Recommendation was subject to de novo review as to those issues upon which the parties raised objections.").

As part of its *de novo* review, the court may consider additional evidence that was not submitted to the Magistrate Judge. *See Hynes,* 143 F.3d at 656 ("Both § 636(b)(1) and FED. R. CIV. P. 72(b) explicitly permit the district court to receive additional evidence as part of its review.") (citation omitted). Because "considerations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration," however, the Second Circuit "has upheld the exercise of the district court's discretion in refusing to allow supplementation of the record upon the district court's *de novo* review." *Id.* at 656 (collecting cases); *see also Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40 n.3 (2d Cir. 1990) (no abuse of discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137–38 (2d Cir. 1994) (no abuse of discretion in refusal to consider supplemental evidence).

Those portions of the recommended ruling that are uncontested will be set aside "only for clear error." *Staggers v. Colvin*, No. 3:14-cv-717 (JCH), 2015 WL 4751123, at *1 (D. Conn. Aug. 11, 2015) (citing *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 n.1 (D. Conn. 2009)).

## III. DISCUSSION

Mr. Santos objects to all of Judge Garfinkel's findings, especially his findings concerning the federal claims. Accordingly, the Court will exercise its discretion under 28 U.S.C. § 636(b)(1) and review the entire recommendation *de novo*, incorporating Mr. Santos's more specific factual and legal objections to the extent necessary.[1]

---

[1] Mr. Santos's arguments that Judge Garfinkel "plagiarized" cases are without merit. Plagiarism is defined as "[t]he deliberate and knowing presentation of another person's original ideas or creative expressions as one's own." *Plagiarism*, BLACK'S LAW DICTIONARY (9th ed. 2009). Courts routinely rely on precedent for guidance in deciding matters before them, and frequently quote this caselaw in their rulings, while directly citing or attributing those quotations as appropriate. *See, e.g.*, *United States v. Rybicki,* 354 F.3d 124, 136 (2d Cir. 2003) ("[W]e must therefore look to the case law . . . to determine whether there was a clear meaning of "scheme or artifice to deprive another of the intangible right of honest services.") (internal quotation marks omitted); Alexa Z. Chew, *Citation*

As explained below, Judge Garfinkel correctly applied the relevant legal standards in reviewing Mr. Santos's federal claims.

## A. The ADA Claim

Judge Garfinkel recommended that the Court dismiss Mr. Santos's ADA claim because Mr. Santos failed to state a plausible claim to relief under Title III of the ADA, which generally prohibits discrimination on the basis of disability in public accommodations.[2] Rec. Ruling at 4.

The Court agrees.

In order to state a claim under Title III of the ADA, plaintiffs must allege: (1) that they are disabled under the meaning of the ADA; (2) that defendant(s) own, lease or operate a place of public accommodation; and (3) that defendant(s) discriminated against them by denying them a full and equal opportunity to enjoy the services defendants provide because of that known

---

*Literacy*, 70 ARK. L. REV. 869, 880 (2018) ("Formal citations across disciplines usually include bibliographic information that is detailed enough to help the reader locate the cited source, if desired, and to attribute words to their authors and ideas to their creators."); Frederick Schauer, *Authority and Authorities*, 94 VA. L. REV. 1931, 1934 (2008) ("Rather than being little more than the characteristic form of legal jargon, the law's practice of using and announcing its authorities—its citation practice—is part and parcel of law's character."). Indeed, lower courts are bound to follow the precedents established by higher courts in their jurisdiction, and thus routinely quote from and cite to those cases in their rulings. *See, e.g.*, *In re S. African Apartheid Litig.*, 15 F. Supp. 3d 454, 459 (S.D.N.Y. 2014) ("Lower courts are bound by Second Circuit precedent unless it is expressly or implicitly overruled by the Supreme Court or an en banc panel of the Second Circuit.") (internal quotation marks omitted); *see also* Chew, *supra*, at 873 ("[E]xpert legal writers understand that the legal citations they write are intended to communicate valuable information to their readers about the precedent they've used to build their arguments."); Schauer, *supra*, at 1955 n.75 ("Citation is not just a pathway to precedent; it is the language the law uses to embody its precedential character.").

Moreover, while Mr. Santos claims that Judge Garfinkel relied on cases too dissimilar from his, Mr. Santos has not attempted to distinguish specifically those cases. *See, e.g.*, *United States v. Ciak*, 102 F.3d 38, 46 (2d Cir. 1996) ("The defendant argues that this case is distinguishable from *Bifield* due to the added confusion arising from Judge Covello's statement in his preliminary instructions that if the jury believed that that there's a real possibility that [the defendant is] not guilty, [the jury] must give him the benefit of the doubt and find him not guilty.").

[2] The Court notes that Judge Garfinkel construed the Complaint as alleging that the ADA claim was brought under Title III of that statute, which prohibits discrimination in public accommodations, despite the fact that the Complaint does not specify what Title it is filed under. This was proper because Mr. Santos does not allege that Defendant was a covered entity (for Title I employment discrimination purposes) or a public entity (for Title II public services discrimination purposes). *See generally Mary Jo C. v. N.Y. State & Local Retirement Sys.*, 707 F.3d 144, 169 (2d Cir. 2013) ("Title I prohibits discrimination by a 'covered entity,' which it defines as, *inter alia*, 'an employer,' whereas Title II prohibits discrimination by a 'public entity,' which it defines as, *inter alia*, 'any State or local government [or agency thereof].'") (quoting 42 U.S.C. §§ 12111(2) and 12131(1)).

disability. *Camarillo v. Carrols Corp.,* 518 F.3d 153, 156 (2d Cir. 2008); *Krist v. Kolombos Rest Inc.,* 688 F.3d 89, 94–95 (2d Cir. 2012).

Mr. Santos has sufficiently pleaded the first and second elements of an ADA claim. First, he has alleged that his vision is impaired due to cataracts and diplopia. Compl. ¶ 8; Pl.'s Obj. Mr. Santos also has pleaded that Defendant had both a record and knowledge of these impairments. *Id.* at 5. While the Complaint only states that when Defendant allegedly refused to fill out his short-term disability form, surgery was "not necessary for several months at that time, since only near sight was substantially affected," this allegation appears, liberally construed, to be sufficient to plead that he was disabled for purposes of the ADA, as he alleges that a major life activity— seeing—was substantially affected.[3] *See Widomski v. State Univ. of N.Y. (SUNY) at Orange,* 748 F.3d 471, 474 (2d Cir. 2014) ("The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.") (citing 42 U.S.C. § 12102(2)); *see also id.* ("[T]he Supreme Court has expressly stated that the ADA's definition of disability applies to all Titles of the Act.") (citing *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 201 (2002)). Accordingly, he has sufficiently pleaded the first element of an ADA claim.

Second, Plaintiff has sufficiently alleged that Defendant operates a place of public accommodation whose operations affect commerce: a doctor's office. 42 U.S.C. § 12181(7)(F) ("professional office of a healthcare provider" is a place of public accommodation.); *see Leonard*

---

[3] In his objection, Mr. Santos alleges that he also had mental impairments, and that Defendant was aware of these impairments "and disregarded the necessary services to be considerate and aid [him] with his mental impairment and symptoms: forgetfulness, loss of concentration, deep depression, severe anxiety, panic attacks." Pl.'s Obj. at 5. However, Mr. Santos has failed to allege that these mental impairments have substantially limited any major life activities, and therefore has failed to allege that these alleged mental impairments make him disabled for purposes of under the ADA.

*F. v. Israel Disc. Bank of N.Y.,* 199 F.3d 99, 101 (2d Cir. 1999) ("Title III includes a long list of private entities that qualify as a 'public accommodations' so long as their operations 'affect commerce,' including an 'insurance office, professional office of a health care provider, hospital, or other service establishment.'") (quoting 42 U.S.C. § 12181(7)(F)). Accordingly, he has sufficiently pleaded the second element of an ADA claim.

But Mr. Santos has not pleaded sufficient facts to allege the third element of Title III of the ADA: that he was discriminated against on the basis of his disability.

Discrimination on the basis of disability in public accommodations involves, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . ." *Camarillo,* 518 F.3d at 156 (citing 42 U.S.C. § 12182(b)(2)(A)(iii)); *see also Krist*, 688 F.3d at 94 ("The Act defines discrimination to include . . . 'a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods [and] services . . . to individuals with disabilities, unless . . . such modifications would fundamentally alter the nature of such goods [and] services.'") (quoting 42 U.S.C. § 12182(b)(2)(A)(ii)). .

In his objection, Mr. Santos alleged that the manner in which Defendant' filled out the "Health Summary to [his] insurance company," compared to the way it filled out his ADA accommodation form, was discriminatory towards him. Pl.'s Obj. at 3. Specifically, he alleges that "on [the] Health Summary to the insurance company (Aetna), the Defendant answered differently (more truthfully and professionally) to protect itself from any documented wrong-doing." Pl.'s Obj. at 3; *see* Defendant's Health Summary of Plaintiff, annexed as Ex. ORRD 4a to Pl.'s Obj.

Mr. Santos further alleges that "[o]n the ADA Accommodation sheet however, upon information and belief, there was more than one person who filled out the form, and the last person (assumed overseer) crossed out and informally modified [the form]". *Id.* at 4; *see also* Yale New Haven Hospital in-House Accommodation Form, annexed as Ex. ORRD 2 to Pl.'s Obj. Mr. Santos alleges that Defendant's act of "manipulating" the ADA form resulted in his denial of accommodation at work violated his rights under the ADA, and then eventually his termination. Pl.'s Obj. at 4.

Liberally construed, Mr. Santos argues that the manner in which Defendant completed his medical forms resulted in his denial of accommodation and subsequently, the termination of his job. But Mr. Santos fails to allege how the completion of the medical form could constitute discrimination under Title III of the ADA.

Taking Mr. Santos's allegations as true, as the Court must on a motion to dismiss, Defendant did not deny Mr. Santos its "services." Mr. Santos received precisely what he requested: the completion of a medical form. To the extent the alleged "manipulation" of the form constituted discrimination, Mr. Santos has not pleaded any facts allowing for a plausible inference that this was done for any discriminatory reason—or that this manipulation resulted in the discriminatory provision of services to him.

In order for Mr. Santos to have a plausible claim of ADA discrimination, his Complaint must provide "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mr. Santos's Complaint, however, only provides enough "factual content" to conclude that the information provided by the Defendant was not what Mr. Santos wanted, not that the information on the medical form

was placed there for the purpose of discriminating against Mr. Santos because of an alleged disability.

Moreover, even if Mr. Santos had adequately pleaded discrimination under the ADA, the third element of an ADA Title III claim, his Complaint would still fail to state a claim upon which relief can be granted because, as Judge Garfinkel explained, he appears to only seek monetary damages for his alleged ADA violation. Injunctive relief is the only remedy available under Title III of the ADA. *See Powell v. National Bd. Of Medical Examiners,* 364 F.3d 79, 86 (2d Cir. 2004) ("Monetary relief . . . is not available to private individuals under Title III of the ADA.").

Mr. Santos objects that "there was no request for damages made" in his Complaint. Pl.'s Obj. at 6. He allegedly only requested that the Court grant relief "as the Court deems necessary and proper in the public[s] [sic] interest" for this claim. *Id.* But while Mr. Santos's general demands for relief for all of his claims, liberally construed, might arguably be read to be broader than a strict claim for damages, *see* Compl. at 10 ¶¶ a–f, the count describing his claim under the ADA only describes monetary damages suffered as a result of discrimination—and he alleges no set of facts that indicate any type of injunctive relief he might be entitled to under the ADA. *See* Compl. ¶ 47; *see also Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014) ("Although we liberally construe Teichmann's pro se amended complaint, we still require that he plead facts sufficient to state a claim to relief that is plausible on its face.") (citing *Triestman*, 470 F.3d at 474, and quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) ("Because Fowlkes appeared *pro se* before the District Court, he is 'entitled to special solicitude,' and we will read his pleadings 'to raise the strongest arguments that they suggest.' . . . . At the same time, a *pro se* complaint must

allege 'enough facts to state a claim to relief that is plausible on its face.'") (quoting *Triestman*, 470 F.3d at 477; *Twombly*, 550 U.S. at 570). .

Judge Garfinkel thus correctly concluded that Mr. Santos failed to state a plausible claim for relief under Title III of the ADA. Accordingly, the Court adopts his recommendation and dismisses Mr. Santos's ADA claim.

### B. The False Claims Act Claim

Judge Garfinkel recommended that the Court dismiss Mr. Santos's False Claim Act claim because he failed to state a plausible claim to relief under 28 U.S.C. § 1915. Rec. Ruling at 4.

The Court agrees.

"The False Claims Act 'was originally aimed principally at stopping the massive frauds perpetuated by large contractors during the Civil War.'" *Univ. Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1996 (2016) (quoting *United States v. Bornstein,* 423 U.S. 303, 309 (1976)). "Since then, Congress has repeatedly amended the Act, but its focus remains on those who represent or directly induce the submission of false or fraudulent claims." *Id.* "The FCA is intended to recover damages from those who defraud the federal government," and "imposes liability on those who knowingly make, use, or cause to be used, false records or statement to get false claims paid or approved." *United States v. Empire Educ. Corp.,* 959 F. Supp. 2d 248, 253 (N.D.N.Y 2013) (citing 31 U.S.C. § 3729(a)(1)(A) & (B)).

Private individuals may bring *qui tam* actions under the False Claims Act, which must allege a violation of government rights, in addition to individual rights. *See United States ex rel. Mergent Servs. v. Flaherty,* 540 F.3d 89, 93 (2d Cir. 2008) ("[A] private person, or 'relator' may bring a qui tam action 'for the person and for the United States Government,' against the defendant, 'in the name of the Government.' Under such circumstances, the government may

elect to intervene . . . . If the government declines to intervene, the relator may pursue the action and may receive as much as 30 percent of any judgment rendered.") (quoting 31 U.S.C. § 3730(b)(1) and citing 31 U.S.C. § 3730(d)(1)–(2)); *see, e.g.*, *Univ. Health Servs.*, 136 S. Ct. at 1997 (parents, as relators, brought qui tam suit against healthcare provider under the False Claims Act for violation of state Medicaid regulations).

In this Circuit, however, *pro se* litigants may not pursue qui tam actions under the False Claims Act because the United States remains the real party in interest in a qui tam action, and *pro se* litigants may only plead and conduct their own cases personally under 28 U.S.C. § 1654. *See Mergent Servs.,* 540 F.3d at 93 ( "[A]s the United States 'remains the real party in interest' in *qui tam* actions*,* the case, albeit controlled and litigated by the relator, is not the relator's 'own case' as required by 28 U.S.C. § 1654, nor one in which he has an interest personal to him. Because relators lack a personal interest in False Claims Act *qui tam* actions, we conclude that they are not entitled to proceed *pro se*.") (citations and internal quotation marks omitted).

To state a claim under the False Claim Act, a "plaintiff must show the defendants (1) made a claim, (2) to the United States Government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *United States ex rel. Kirk v. Schindler Elevator Corp.,* 601 F.3d 94, 113 (2d Cir. 2010), *rev'd on other grounds*, 563 U.S. 401 (2011).

Judge Garfinkel correctly concluded that because a *pro se* litigant cannot bring an False Claims Act claim in this Circuit, the Complaint must be dismissed.[4] *See Mergent Servs.*, 540

---

[4] While the Second Circuit in *Mergent Servs.* did not explicitly state that the dismissal was required because a *pro se* plaintiff cannot state a claim upon which relief may be granted (as opposed to being required due to lack of standing), the Second Circuit has (1) affirmed that relators "indisputably have a stake in the outcome of False Claims Act *qui tam* cases that they initiate," and (2) explicitly affirmed the dismissal of *pro se* False Claims Act qui tam claims "as a matter of statutory construction" under 28 U.S.C. § 1654. *Mergent Servs.*, 540 F.3d at 93, 94. Accordingly, dismissals on this basis are for failure to state a claim upon which relief may be granted. *See, e.g.*, *United States ex rel. Eisenstein v. City of N.Y.*, 540 F.3d 94, 96 n.1 (2d Cir. 2008) (noting that, while holding of

F.3d at 90–91 (affirming dismissal of *pro se* False Claims Act *qui tam* because private persons are "statutorily barred from bringing such actions *pro se*.").

But even if Mr. Santos was represented, he has not pleaded sufficient facts to state a plausible claim for relief under the False Claims Act. *See United States ex rel. Keith Darnell Fair v. Mnuchin*, No. 6:18-CV-1402 (GLS/TWD), 2019 WL 269437, at *5 (N.D.N.Y. Jan. 8, 2019) (after recommending False Claims Act *qui tam* claim should be dismissed because plaintiff was unrepresented, magistrate judge evaluated Complaint and concluded that, even if he were represented or counsel were appointed, plaintiff had not alleged facts sufficient to state a *qui tam* claim under the False Claims Act), *report and recommendation adopted*, 2019 WL 416149, at *1 (N.D.N.Y. Feb. 1, 2019).

Mr. Santos fails to allege what rights of the government was violated by Defendant's actions. The False Claims Act "is broadly phrased to reach any person who makes or causes to be made 'any claim upon or against' the United States, or who makes a false 'bill, receipt, . . . claim, . . . affidavit, or deposition' for the purpose of 'obtaining or aiding to obtain the payment or approval of' such a false claim." *United States v. Neifert-White Co.,* 390 U.S. 228, 232 (1968) (citation omitted). Therefore, in order for Mr. Santos to successfully bring a *qui tam* claim under the False Claims Act, he must allege sufficient facts to prove that Defendant brought a false claim to obtain or aid to obtain approval for such false claim.

---

*Mergent Servs.* would also require dismissal of *pro se* litigants' False Claims Act *qui tam* claim, Second Circuit could not reach the issue as it was not properly before it on appeal—suggesting it was not a matter of standing fundamental to court's subject matter jurisdiction); *Bowens v. Corr. Assoc. of N.Y.*, No. 19-CV-1523 (PKC) (CLP), 2019 WL 1586857, at *5 (E.D.N.Y. Apr. 12, 2019) (dismissing *pro se* plaintiff's False Claims Act *qui tam* claim, under *Mergent Servs.*, for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii)).

Liberally construed, Mr. Santos alleges that because Defendant deliberately filled out his ADA accommodation forms in a fraudulent manner, and he sought an accommodation granted by the U.S. government under a federal statute, the Defendant violated the False Claims Act.

Mr. Santos, however, has not alleged any facts suggesting that Defendant did fill out his accommodations forms fraudulently, or that such action was an attempt by Defendant to receive a payment from the U.S. government in any way. (Indeed, because Defendant did not make Mr. Santos eligible for disability benefits, Defendant has not tried to secure falsely any money from the United States). Because he has failed to allege such facts, he has failed to state a *qui tam* claim under the False Claims Act. *See Keith Darnell Fair*, 2019 WL 269437, at *5 ("Because Plaintiff has failed to allege facts showing that Judge Davis or any of the other Defendants made a knowingly false or fraudulent claim to the United States government seeking payment from the federal treasury, the Court concludes that he has failed to state a qui tam claim under the FCA.") (citation omitted).

Judge Garfinkel thus correctly concluded that Mr. Santos failed to state a plausible claim for relief under the False Claims Act. Accordingly, the Court adopts his recommendation and dismisses the False Claims Act claim for failure to state a claim.

### C. State Law Claims

Judge Garfinkel also recommended that, upon the dismissal of Mr. Santos's federal claims, the Court should decline to exercise supplemental jurisdiction over Mr. Santos's state claims. Rec. Ruling at 5.

The Court agrees.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in

the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari v. N.Y.– Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *see also Catzin v. Thank You & Good Luck Corp.,* 899 F.3d 77, 83 (2d Cir. 2018) ("If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction . . . . 'a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity.'") (quoting *Jones v. Ford Motor Credit Co.*, 385 F.3d 205, 214 (2d Cir. 2004)).

"In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that "in the usual case in which all federal claims are eliminated before trial, the balance of factors…will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari,* 455 F.3d at 122 (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988); *Catzin*, 899 F.3d at 83 ("Under this prong, in a great many cases, the evaluation will usually result in the dismissal of the state-law claims.").

But as the Second Circuit recently emphasized, "[t]he principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction "in the usual case" clearly does not mean that the balance of the factors always points that way." *Catzin,* 899 F.3d at 86. Thus, "[w]hen § 1367(c)(3) applies, the district court

must still meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.*

In this case, Mr. Santos alleged that Defendant violated his rights under two federal laws: the ADA and the False Claims Act. This Court agrees with Judge Garfinkel's recommendation, however, that Mr. Santos failed to allege sufficient facts to state a claim under either one of these claims, and has dismissed both of these claims. *See supra* §§ III.C & III.D. The Court therefore must conduct the discretionary inquiry required by 28 U.S.C. § 1367(c).

Having weighed those factors, this case appears to be the "usual case." In particular, the principle of comity suggests that Connecticut state courts should have the opportunity to evaluate Mr. Santos's remaining claims, under state-law pleading standards, to determine whether they, in fact, could state a plausible cause of action under Connecticut law. The Court further finds that, given the early stage of this case—where Defendant has not yet been served, let alone appeared—there is no added convenience in retaining jurisdiction here.

Accordingly, the Court adopts Judge Garfinkel's recommendation and therefore declines to exercise supplemental jurisdiction over Mr. Santos's remaining claims under Connecticut state law.[5]

### D. Leave to Amend

Both before and after Judge Garfinkel's recommended ruling, Mr. Santos filed a motion to amend his Complaint to add various counts. Neither of these proposed amendments remedy the issues discussed above. *See* First Mot. to Amend Compl. (seeking to amend his complaint to

---

[5] Mr. Santos is not entitled to have his case transferred to another court under 28 U.S.C. § 1406(a) because this case was not filed in the wrong division or district. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). Indeed, in his Complaint, Mr. Santos previously acknowledged that venue was proper in this Court. Compl. ¶ 6 ("Venue in this Court is proper because the discriminatory actions alleged herein occurred in Connecticut.").

add new state law claims as Counts 8–13); Second Mot. to Amend Compl. (seeking leave to amend to add new state law claim as Count 14).. As a result, these motions must be denied as futile. *See Kim v. Kimm,* 884 F.3d 98, 105–106 (2d Cir. 2018) ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [plaintiff] leave to amend.") (citing *Ellis v. Chao,* 336 F.3d 114, 127 (2d Cir. 2003)); *see also Tocker v. Phillip Morris Companies, Inc.,* 470 F.3d 481, 491 (2d Cir. 2006) ("[A] motion for leave to amend a complaint may be denied when amendment would be futile.") (citing *Ellis,* 336 F.3d at 127).

While Mr. Santos has not yet moved for leave to amend the Complaint with respect to his flawed ADA and False Claims Act claims, for the reasons discussed below, granting such leave to amend also would be futile.

The Second Circuit has held that "[a] *pro se* complaint should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010)) (internal quotation marks omitted). This is because "a *pro se* plaintiff who is proceeding *in forma pauperis* should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999).

But by the same token, where there is no indication that a valid claim might be stated after a liberal reading of a *pro se* plaintiff's complaint, the Court need not grant leave to amend. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("[w]here it appears that

granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend."); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) ("We do not find that the complaint "liberally read" suggests that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe . . . . The problem with [this pro se plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citations, internal quotation marks, and alterations omitted).

Here, Mr. Santos had an ample opportunity to present further facts to the Court, when objecting to Judge Garfinkel's recommended ruling of dismissal to demonstrate a plausible claim for relief under the ADA or the False Claims Act. Mr. Santos also moved to amend his Complaint after Judge Garfinkel's recommended ruling, but only took that opportunity to add new state law claims.

With respect to the ADA claim, in his objection, Mr. Santos has made clear the discrimination he claims to have experienced: the "manipulation" of the accommodation form, because the Defendant viewed his medical condition differently than he did. Having read the Complaint and Mr. Santos's objections liberally, Mr. Santos has still failed to plead sufficient facts to state a claim of discrimination under Title III of the ADA, for the reasons explained above. Because the Court cannot identify any other facts that, if pleaded, would indicate that Mr. Santos could have stated a plausible claim against Defendant under Title III of the ADA, it would be futile to provide Mr. Santos yet another opportunity to try and address his ADA claim through leave to amend his Complaint.

With respect to the False Claims Act claim, in his objection, Mr. Santos had the opportunity to demonstrate what government rights he sought to enforce: a right granted by the

government under a federal statute, and that the Defendant violated the False Claims Act. Having read the Complaint and Mr. Santos's objections liberally, Mr. Santos's claim has no basis in law, , for the reasons explained above. Because the Court can identify no other plausible claim that Mr. Santos could have pleaded against Defendant under the False Claims Act—notwithstanding the fact that he is also *pro se* and cannot bring an False Claims Act *qui tam* claim under the law of this Circuit, it would be futile to provide Mr. Santos yet another opportunity to try and address his False Claims Act claim through leave to amend his Complaint.

Accordingly, because granting leave to amend here would be futile, as the underlying legal theories behind his federal claims are fundamentally flawed, and an opportunity to amend them will not cure them, the Court declines to provide leave to amend the Complaint. *See Wright v. Albany City Police Court,* 1:18-CV-649, 2018 WL 4347793 at *3 (N.D.N.Y. Sept. 12, 2018) (after reviewing report and recommendation of dismissal of *pro se* plaintiff's complaint, and objections, and adopting recommendation, court concluded that "granting Plaintiff leave to amend would be, to say the least, unlikely to be productive and indeed would be futile."); *Galloway v. Caputo*, No. 3:17-cv-2156 (JCH), 2018 WL 5044244, at *2 (D. Conn. Feb. 9, 2018) ("Although the Court reads the pleadings of self-represented parties generously, it is plain that there is no basis for the assertion of federal jurisdiction over this personal injury claim between non-diverse parties. Leave to amend need not be granted, particularly where a plaintiff has already had an opportunity to amend the complaint, when amendment would be futile.").

## IV.    CONCLUSION

For the reasons explained above, the Court **ADOPTS** Judge Garfinkel's recommended ruling in full.

Mr. Santos's ADA and False Claims Act claims are dismissed for failure to state a claim and the Court declines to exercise supplemental jurisdiction over Mr. Santos's remaining state law claims. Mr. Santos's state law claims therefore are dismissed without prejudice to refiling in state court.

Mr. Santos's pending motions to amend the Complaint are **DENIED** as futile and any further leave to amend the Complaint with respect to the ADA and False Claims Act claims also would be futile.

The Court therefore **DISMISSES** this case with prejudice.

The Clerk of the Court is respectfully directed to enter judgment against Mr. Santos on the federal claims only and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of July, 2019.

 /s/ Victor A. Bolden 
Victor A. Bolden
United States District Judge